The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **June 12, 2023**

**No. A-1-CA-38700**

**CHRISTOPHER GUEST, as Personal Representative of THE ESTATE OF SUZANNE R. GUEST, Deceased,**

Plaintiff-Appellee/Cross-Appellant,

v.

**ALLSTATE INSURANCE COMPANY,**

Defendant-Appellant/Cross-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Raymond Z. Ortiz, District Court Judge**

Wilson Law Firm, P.C.
Alan R. Wilson
Albuquerque, NM

for Appellee

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Jennifer A. Noya
Albuquerque, NM

Dentons US LLP
Richard L. Fenton
Chicago, IL

for Appellant

**OPINION**

**HENDERSON, Judge.**

{1}      Defendant Allstate Insurance Co. (Allstate) appeals the district court's judgment on remand awarding Plaintiff Suzanne Guest and The Guest Law Firm, P.C. (collectively, Guest) $3,445,093.66 in attorney fees and costs, and $1,842,900 in punitive damages.[1] This case comes to us after proceedings were held in district court on remand from our New Mexico Supreme Court. Allstate raises numerous claims of error concerning the remand proceedings, including the propriety of the attorney fees and costs award, the calculation of punitive damages, and the imposition of compound interest. Because we hold that the district court followed our Supreme Court's mandate on attorney fees and costs, and Guest, who was an attorney at times acting pro se, was properly awarded attorney fees for her own time litigating this matter, we affirm in part. However, the district court failed to follow the mandate on punitive damages and impermissibly awarded compound interest, and so we reverse in part, and remand for further proceedings consistent with this opinion.[2]

---

[1]Sometime after briefing on appeal was completed, Suzanne Guest died. Christopher Guest, the representative of her estate, was substituted as plaintiff by Court order pursuant to Rule 12-301(A) NMRA.

[2]Guest also purports to cross-appeal. Although a notice of cross-appeal was filed, Guest never filed a docketing statement or brief in chief, and only filed an answer brief. *See* Rule 12-318(I) NMRA ("The appellee's answer brief and brief in chief on cross-appeal shall be filed simultaneously as separate documents."); *see*

**BACKGROUND**

{2}    Guest was an attorney who represented Allstate in a lawsuit brought by its insureds. *See Guest v. Allstate Ins. Co.* (the *Durham* litigation), 2010-NMSC-047, ¶ 4, 149 N.M. 74, 244 P.3d 342. After that case was arbitrated, the same insureds sued Allstate for bad faith insurance practices, conspiracy, and fraud. *Id.* ¶ 5. The insureds also sued Guest for her role as Allstate's attorney. *Id.*; *see Durham v. Guest* (the *Allstate* litigation), 2009-NMSC-007, ¶ 5, 145 N.M. 694, 204 P.3d 19. The *Allstate* litigation began in 2005, when Guest sued Allstate for failing to honor its agreement to defend and indemnify her in the *Durham* litigation. The facts underlying this and related lawsuits have been described in five other reported appellate opinions, so we will not repeat them in detail. *See Durham*, 2009-NMSC-007; *Guest*, 2010-NMSC-047; *Guest v. Allstate Ins. Co.*, 2009-NMCA-037, 145 N.M. 797, 205 P.3d 844, *rev'd in part on other grounds by*, 2010-NMSC-047; *Guest v. Berardinelli*, 2008-NMCA-144, 145 N.M. 186, 195 P.3d 353; *Durham v. Guest*, 2007-NMCA-144, 142 N.M. 817, 171 P.3d 756, *rev'd on other grounds by* 2009-NMSC-007.

---

*also Reynolds v. Ruidoso Racing Ass'n*, 1961-NMSC-116, ¶ 32, 69 N.M. 248, 365 P.2d 671 (declining to address a purported cross-appeal when the only errors suggested appeared in the answer brief). Guest's cross-appeal is accordingly abandoned, and to the extent Guest's answer brief articulates any independent claims of error, we do not address them.

{3}     The upshot is that Guest succeeded in holding Allstate liable—a jury awarded her $1,842,900 in compensatory damages and $9,000,000 in punitive damages, based on Allstate's breach of contract, breach of its duty of good faith and fair dealing, and prima facie tort. *Guest*, 2010-NMSC-047, ¶¶ 23-24. On due process grounds, the district court reduced the punitive damages award to match the compensatory damages award. *Id.* ¶ 25. The district court also denied Guest's post-trial request for attorney fees and costs, which was based on NMSA 1978, Section 39-2-1 (1977) and NMSA 1978, Section 59A-16-30(B) (1990), because it concluded her agreement with Allstate was not an insurance contract. *See Guest*, 2010-NMSC-047, ¶ 25.

{4}     In the most recent appellate decision in this case, *Guest*, 2010-NMSC-047, our Supreme Court affirmed the jury's breach of contract verdict, reduced Guest's compensatory damages based on public policy grounds, and determined that her agreement with Allstate was, in fact, an insurance contract. *Id.* ¶¶ 34-35, 42, 44, 58, 68. The Court accordingly issued a limited remand stating,

> We do not decide whether Guest is actually entitled to attorney fees because that issue is not properly before us. We only hold that the contract in this case is an insurance contract, and we remand to the trial court to consider whether Guest's legal theories for the recovery of her fees have merit and to consider the evidence accordingly.
>
> As a final matter, Allstate does not challenge and we do not disturb the jury's finding that Guest is entitled to punitive damages. The sole remaining issues for the trial court on remand are whether Guest should recover her legal fees and whether Guest's punitive damages

3

award is constitutionally reasonable given the reduction of her compensatory damages in this appeal. We consider all other issues raised on appeal to be resolved by this [o]pinion.

We affirm the Court of Appeals with respect to Allstate's liability for breach of contract, and we affirm on other grounds its denial of Guest's unearned fees. We reverse the Court of Appeals' ruling that the agreement to defend and indemnify Guest is not an insurance contract and remand the matter to the trial court for proceedings consistent with this opinion.

*Id.* ¶¶ 70-72.

{5}    On remand, the parties disagreed over the scope of our Supreme Court's mandate and what further proceedings were required. Allstate, which had now paid Guest's reduced compensatory damages award, sought broader proceedings on remand where it could discover evidence regarding attorney fees and put on expert testimony. In contrast, Guest argued that Allstate was not permitted to defend against her claimed fees—Allstate was required simply to pay what she demanded. Moreover, she asserted that our Supreme Court reinstated the jury's original punitive damages award. Although both parties submitted competing forms of judgment on the mandate, the district court entered its own. That judgment substantially mirrored the language in our Supreme Court's opinion.

{6}    Pursuant to the judgment on the mandate, the district court issued a scheduling order that set deadlines for discovery and a hearing. The district court's scheduling order largely adopted Allstate's plan for broader proceedings, where it envisioned a three-day hearing, fact discovery, expert witnesses, and depositions. Thereafter, the

parties exchanged significant discovery, including disclosure of multiple experts, and engaged in extended motions practice. After several discovery disputes, in August 2012, the district court finally held the hearing on remand.

{7}     Neither party directs us with any specificity to the events that transpired during the five-day hearing on remand. We emphasize that the Rules of Appellate Procedure require parties to provide this Court with specific citations to the record related to all pertinent issues. *See* Rule 12-318(A)(3)-(4). Failure to meet this requirement is always problematic, but it is especially problematic where, as here, the appeal is complex and based on a voluminous record.[3] When the hearing concluded, the parties subsequently submitted competing proposed findings of fact and conclusions of law. The district court entered its own findings of fact and conclusions of law four years later, in September 2016. Both parties moved to amend

---

[3] Our discussion of Allstate's arguments highlights the importance of complying with the Rules of Appellate Procedure. Guest's briefing does as well. Guest's answer brief runs afoul of many requirements of the rules. The brief was filed late, fails to cite a single legal authority to support any of its arguments, contains no citations to the record to support any of its factual assertions, includes no table of contents and no table of authorities, and is forty-five pages long without any certificate indicating that it complies with limitations on length. *See* Rule 12-318(A)(1)-(2), (4), (B), (G), (H). "The Rules of Appellate Procedure exist to ensure the efficient and fair administration of justice." *Rio Grande Kennel Club v. City of Albuquerque*, 2008-NMCA-093, ¶ 55, 144 N.M. 636, 190 P.3d 1131. Poor briefing undermines those interests. Although Guest's brief presents an outlier, this Court is aware of even minor violations of our rules, and while we do not always point it out in writing, we caution litigants to be mindful of those rules when appearing before an appellate court.

the district court's order. Nearly three years later, on April 19, 2019, the district court issued its second, and final amended findings of fact and conclusions of law.

{8} In broad strokes, the district court concluded that Guest could recover her attorney fees and costs because Allstate's conduct in refusing to defend and indemnify her was done willfully under Section 59A-16-30(B). Alternatively, the district court also concluded that attorney fees and costs were recoverable under Section 39-2-1 because Guest was owed first-party insurance coverage and Allstate acted unreasonably by maintaining that it had no contract with her. In total, the district court found that Guest had incurred $3,321,220.66 in recoverable attorney fees and costs, including $93,005.86 in expert costs. These fees and costs were incurred throughout Guest's litigation saga in this case; they included her own fees from times when she was without representation, as well as four other law firms' fees. Finally, the district court concluded that the $1,842,900 punitive damages award was constitutionally reasonable. This conclusion was made based not only on Guest's reduced compensatory damages, but also in reference to the new attorney fees and costs award. After a number of Guest's post-judgment motions attacking the district court's findings of fact and conclusions of law were denied, Allstate timely appealed.

6

**DISCUSSION**

{9}     Allstate raises a myriad of issues—an approach that detracted from the efficacy of its briefing, especially because Allstate organized its presentation of several issues in a confusing fashion and omitted discussion of important facts and law. *Cf. Rio Grande Kennel Club*, 2008-NMCA-093, ¶ 55 ("[W]e encourage litigants to consider carefully whether the number of issues they intend to appeal will negatively impact the efficacy with which each of those issues can be presented."). We summarize Allstate's arguments here, along with our disposition, and then discuss in turn those arguments that we believe warrant further explanation.

{10}     First, Allstate attacks the district court's jurisdiction on remand. Allstate contends that the district court exceeded our Supreme Court's mandate by (a) allowing further discovery and holding an evidentiary hearing on Guest's attorney fees based on unpled theories for recovery, and (b) evaluating the constitutionality of Guest's punitive damages award by comparing it against her compensatory damages *and* the new attorney fees and costs award. We reject Allstate's first argument, but agree that the district court exceeded the mandate regarding punitive damages.

{11}     Second, Allstate argues that, even if the mandate was followed, neither Section 39-2-1 nor Section 59A-16-30(B) support awarding Guest attorney fees. The parties' insurance contract, according to Allstate, was a typical form of first-party

7

insurance, so Section 39-2-1 is inapplicable. Regarding the district court's finding of misconduct, Allstate contends that it did not act either unreasonably or willfully to support a fee award under either statute, highlighting its good faith defenses to Guest's claims. Ultimately, Allstate has failed to persuade us that the district court erred in awarding Guest attorney fees under Section 59A-16-30(B).

{12} Third, similar to its mandate argument, Allstate complains that the attorney fees award denied it due process because Guest never pled recovery under an insurance contract theory. However, Allstate has previously made this argument to this Court, and failed to renew it when it had the opportunity to do so in its appeal to our Supreme Court. We accordingly hold that the argument is precluded by the law of the case doctrine.

{13} Fourth, Allstate asserts Guest should not have been awarded attorney fees for her own time litigating her claims because pro se litigants are not entitled to attorney fees. Allstate also attacks the district court's determination that Guest could recover the costs of her experts, regardless of whether they testified in the matter, or fees for what Allstate contends are "extra-contractual claims." Allstate also asserts generally that the fee award was excessive. We hold that Guest may recover fees for her own time litigating this matter, and otherwise find no error in the district court's award of fees and costs.

{14} Fifth, concerning punitive damages, Allstate argues that even if the district court followed the mandate, it improperly evaluated the constitutionality of the jury's award. The district court examined the punitive damages award with respect to both the reduced compensatory award and the attorney fees award. Allstate contends that this method of analysis is legally inaccurate and deprived it of due process. Further, Allstate contends that we should reduce the punitive damages award to match Guest's compensatory award, as reduced by our Supreme Court. Because we reverse the district court for exceeding our Supreme Court's mandate on punitive damages, we do not reach these arguments and have no opinion on their merits.

{15} Sixth, and finally, Allstate contends that it was error for the district court to impose pre and post-judgment interest that compounds either annually or monthly on the final judgment. It asserts that prejudgment interest, which was only applied to the fee award for Guest's own time litigating, impermissibly applied to what Allstate contends was a sanction. Moreover, even if the prejudgment interest award is permissible, Allstate argues that the award is unwarranted because it did not delay proceedings. And regarding both pre and post-judgment interest, the district court awarded compound interest, which Allstate argues is impermissible under New Mexico law. Allstate has not met its burden of demonstrating that the district court

abused its discretion in awarding prejudgment interest, but we do agree that the district court erred in awarding compound, instead of simple, interest.

## I. Jurisdiction on Remand

{16} We review whether the district court followed our Supreme Court's mandate de novo, as the mandate involves a question of law. *See Martinez v. Pojoaque Gaming Inc.*, 2011-NMCA-103, ¶ 17, 150 N.M. 629, 264 P.3d 725. An appellate court's "opinion and mandate set forth the full extent of the jurisdiction of the district court on remand." *State ex rel. King v. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 22, 145 N.M. 769, 205 P.3d 816. "It is well settled that the duty of a lower court on remand is to comply with the mandate of the appellate court, and *to obey the directions therein without variation . . . .*" *Vinton Eppsco Inc. of Albuquerque v. Showe Homes, Inc.*, 1981-NMSC-114, ¶ 4, 97 N.M. 225, 638 P.2d 1070 (emphasis added). Sometimes, however, the directions in the mandate are less than clear, such as when the appellate court calls for significant, further proceedings but is silent on what those proceedings should entail. "If there is any doubt or ambiguity regarding the mandate, the *meaning* of the [appellate court's] opinion governs." *UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 22.

### A. Mandate on Attorney Fees and Costs

{17} The district court did not exceed our Supreme Court's mandate regarding attorney fees and costs. The district court was directed by our Supreme Court to

10

determine whether any of Guest's "legal theories for the recovery of her fees have merit and to consider the evidence accordingly." *Guest*, 2010-NMSC-047, ¶ 70. Our Supreme Court thus remanded "the matter to the [district] court for proceedings consistent with this opinion." *Id.* ¶ 72. Allstate is correct that this mandate did not expressly permit Guest to plead new legal theories for recovery, direct the district court to hold an evidentiary hearing concerning legal fees, or create findings of fact and conclusions of law concerning misconduct. Rather, our Supreme Court's mandate was silent on all these matters. "We must, therefore, look to the Supreme Court's opinion" to determine its intent. *Johnsen v. Fryar*, 1980-NMCA-143, ¶¶ 6-8, 96 N.M. 323, 630 P.2d 275, *overruled on other grounds by Woodson v. Phillips Petroleum Co.*, 1985-NMSC-018, ¶ 12, 102 N.M. 333, 695 P.2d 483.

{18}     Guest never filed a complaint seeking attorney fees and costs under Sections 39-2-1 or 59A-16-30(B) specifically. The first time she requested fees and costs under those statutes was post-trial, in a motion to reconsider after the district court denied her first request. Nevertheless, our Supreme Court's opinion expressly acknowledged that Guest's legal theories for a fee award included those based on her insurance contract with Allstate. Guest asked our Supreme Court "to hold as a matter of law that the agreement meets the statutory definition of insurance and to remand the case so that she can present argument and evidence that she is entitled to attorney fees under statute or the common law." *Guest*, 2010-NMSC-047, ¶ 59. Our

Supreme Court held as such, expressly citing Sections 39-2-1 and 59A-16-30(B). *See Guest*, 2010-NMSC-047, ¶¶ 59, 68. In order to accept Allstate's argument that our Supreme Court did not intend for Guest to be able to argue recovery under either statute on remand, we would have to conclude that our Supreme Court engaged in an extensive but ultimately pointless discussion about whether she had an insurance contract, and that its conclusion that she did have an insurance contract was no more than an advisory opinion. We reject this understanding of our Supreme Court's opinion. *See City of Sunland Park v. Harris News, Inc.*, 2005-NMCA-128, ¶ 50, 138 N.M. 588, 124 P.3d 566 (providing that appellate courts are not generally in the business of drafting advisory opinions to answer hypothetical questions). Instead, we conclude that our Supreme Court intended for the district court to evaluate Guest's theories for recovering attorney fees and costs, even if unpled.

{19} Neither was it improper for the district court to hold an evidentiary hearing to determine whether Guest's theories were valid and, if so, the amount of fees owed to Guest. *See Guest*, 2010-NMSC-047, ¶¶ 59, 70. Prior to remand, no evidence of Guest's attorney fees and costs in this case had been presented. *See Guest*, 2009-NMCA-037, ¶ 59. Our Supreme Court placed no restriction on the district court concerning what further proceedings were required on remand. Rather, our Supreme Court determined that the parties' contract was one of insurance, such that Guest could "present argument *and evidence*" concerning her attorney fees and costs. *Id.*

(emphasis added); *see also Johnsen*, 1980-NMCA-143, ¶¶ 6-8 (evaluating our Supreme Court's opinion to determine its intent for the district court to conduct further evidentiary proceedings on attorney fees on remand even though the mandate was silent on the matter). The district court, if it determined Guest's argument had merit, was to "consider the evidence accordingly." *Guest*, 2010-NMSC-047, ¶ 70. Absent further evidentiary proceedings concerning Guest's attorney fees and costs in this litigation, there would be no evidence for the district court to consider. *Cf. Johnsen*, 1980-NMCA-143, ¶ 8 ("Inasmuch as the then existing evidence was held to be insufficient, it would not have been made sufficient by relating that evidence to the factors to be considered."). The inevitable conclusion is that our Supreme Court intended for the district court to hear new evidence on remand, and to consider Guest's argument in favor of a fee award pursuant to Sections 39-2-1 and 59A-16-30(B).

{20} Allstate attempts to make a distinction between evidence of attorney fees and costs and what it calls "merits" evidence. However, Allstate fails to point to anything in the record indicating that the district court heard evidence beyond what was necessary to determine whether Guest's theories for recovery of her legal fees were supported. The district court's findings of fact included statements regarding Allstate's culpability, but it does not appear on the face of those findings that the district court heard new evidence of misconduct. Rather, they may be fairly read as

13

relying on evidence concerning the applicability of Section 59A-16-30(B) or Section 39-2-1 to this case. Allstate has not shown us anything to the contrary. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 ("The presumption upon review favors the correctness of the [district] court's actions. [The a]ppellant must affirmatively demonstrate its assertion of error.").

{21}   For these reasons, we hold that the district court's proceedings on remand stayed within the confines of our Supreme Court's mandate regarding attorney fees and costs.

**B.      Mandate on Punitive Damages**

{22}   However, we reach a different conclusion regarding the mandate on Guest's punitive damages award. The whole of our Supreme Court's discussion of punitive damages was its instruction that the district court determine "whether Guest's punitive damages award is constitutionally reasonable *given the reduction of her compensatory damages in this appeal*." *Guest*, 2010-NMSC-047, ¶ 71 (emphasis added). While it is tempting to rely entirely on that statement, as Allstate does, determining the constitutionality of punitive damages requires evaluating multiple factors beyond a plaintiff's compensatory damages. *See Aken v. Plains Elec. Generation & Transmission Coop., Inc.*, 2002-NMSC-021, ¶ 20, 132 N.M. 401, 49 P.3d 662. This Court has even indicated in guidance on remand that it may be appropriate to consider a plaintiff's attorney fees as well. *See Dollens v. Wells Fargo*

*Bank, N.A.*, 2021-NMCA-039, ¶¶ 34, 42, 495 P.3d 580.[4] We thus turn once again to the substance of our Supreme Court's opinion for direction.

**{23}** Our Supreme Court concluded that Guest's compensatory damages award from the jury was excessive because it inappropriately included lost future earnings from Allstate, her former client. *See Guest*, 2010-NMSC-047, ¶¶ 1-2, 54. The Court accordingly reduced the award to the "out-of-pocket expenses that Guest incurred in defending herself in the [*Allstate* litigation] up to the time of the trial in this case: a total of $73,873"; and $50,000 for Guest's projected cost of an appeal related to the *Durham* litigation. *Guest*, 2010-NMSC-047, ¶ 58. Guest's compensatory damages award was thus limited to costs incurred from her defense in the *Durham* litigation, not from the current *Allstate* litigation. It was this newly-reduced compensatory damages award the district court was directed to use when evaluating the punitive damages award. *Id.* ¶ 71.

**{24}** Nonetheless, the district court *increased* Guest's total compensatory damages award by concluding that her fee and cost award that was granted on remand was compensatory in nature, and adding that award to Guest's reduced compensatory damages award when evaluating the constitutionality of her punitive damages award. This decision is not consistent with our Supreme Court's opinion. From the

---

[4]The discussion in *Dollens* on the relationship between an attorney fee award and punitive damages has no bearing on this case, because the proceedings on remand here were limited by our Supreme Court's opinion.

face of the mandate and the opinion itself, the district court was expected to evaluate punitive damages based on Guest's reduced compensatory damages, which were wholly from the *Durham* litigation. Our Supreme Court did not anticipate that those damages would be increased based on the current *Allstate* litigation, which included fees and costs that were incurred on remand. This unanticipated event could not have been intended when our Supreme Court reduced Guest's compensatory damages to out-of-pocket expenses from the *Durham* lawsuit and directed the district court to compare that reduction to the punitive damages.

**{25}** The district court therefore exceeded the mandate in this regard, and we reverse its determination upholding the punitive damages award. We remand to the district court to further consider whether Guest's punitive damages award is constitutionally reasonable, in a manner consistent with our Supreme Court's opinion. Because we reverse on this issue, it is unnecessary for us to answer the remainder of Allstate's contentions concerning Guest's punitive damages award.

**II.     Validity of Guest's Attorney Fees Award**

**{26}** Since we conclude that the district court did not exceed the mandate regarding attorney fees and costs, we must address Allstate's other attacks on the award. An award of attorney fees is reviewed for abuse of discretion. *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 6, 127 N.M. 654, 986 P.2d 450. "The test is not what we would have done had we heard the fee request, but whether

16

the [district] court's decision was clearly against the logic and effect of the facts and circumstances before the court." *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 6, 140 N.M. 879, 149 P.3d 976 (internal quotation marks and citation omitted). However, our review of legal questions and whether the law has been correctly applied is de novo. *N.M. Right to Choose/NARAL*, 1999-NMSC-028, ¶ 7.

**A.      Legal Basis for Attorney Fees Award**

{27}      The district court based Guest's award of attorney fees and costs on Section 59A-16-30(B), or in the alternative, Section 39-2-1. We begin with the district court's primary basis. Section 59A-16-30 creates a private right of action for someone "covered by Chapter 59A, Article 16 . . . who has suffered damages as a result of a violation of that article by an insurer or agent." Costs are awarded "to the prevailing party unless the court otherwise directs." *Id.* Attorney fees may be awarded as well, but only if "the party complaining of the violation of that article has brought an action [they] knew to be groundless" or alternatively "the party charged with the violation of that article has willfully engaged in the violation." *Id.*

{28}      Our Supreme Court's opinion determined that Guest was covered by Chapter 59A, Article 16 of the New Mexico Insurance Code. *See Guest*, 2010-NMSC-047, ¶¶ 68-69 (providing that the contract between Guest and Allstate was for insurance, within the meaning of the Insurance Code); *see also* NMSA 1978, § 59A-16-1

17

(2001) (providing what applies to Chapter 59A, Article 16 insurers). The district court was left to determine whether there had been a violation of that article, and, if so, whether it was willful. The district court accordingly found a laundry list of such violations. For example, Allstate had twice ceased paying Guest's defense in the *Durham* litigation "without providing a reasonable written explanation" for its actions in violation of NMSA 1978, Section 59A-16-20(A), (N) (1997). Although Guest "repeatedly sought to communicate with Allstate" regarding her contract, Allstate failed to "timely or reasonably respond," in violation of Section 59A-16-20(B). Allstate also "repeatedly failed to make reasonable attempts in good faith" to pay multiple invoices involving over $29,000 in attorney fees from Guest's counsel in violation of Section 59A-16-20(D), (E). The district court found that Allstate had willfully committed the foregoing violations, justifying an award of attorney fees under Section 59A-16-30(B).

{29} Allstate provides no argument that Guest should not have been awarded costs, instead focusing on the award of attorney fees. To that end, Allstate contends that none of the violations above were willful or unreasonable. Relying on *Amica Mutual Insurance Co. v. Maloney*, 1995-NMSC-059, ¶ 29, 120 N.M. 523, 903 P.2d 834, Allstate argues that because the question of liability and the applicability of Article 16 had not been addressed previously—since they involved Guest's unique agreement—it could not have willfully violated Article 16 by refusing to pay for her

18

defense once she rejected a settlement in the *Durham* litigation. According to Allstate, because two justices dissented in *Guest*, "the issue was very much in doubt, and [it] could not possibly have known that it was violating" Article 16. Allstate also asserts that it "honored the indemnity for years, and Allstate withdrew Guest's defense only after Guest refused" to settle the *Durham* litigation, and again highlighting that two justices would have concluded that Allstate fulfilled its promise to Guest.

{30} The heart of Allstate's argument concerns the legal definition of "willfully" under Section 59A-16-30(B) and whether its conduct fits that definition. However, Allstate's argument is not developed enough for us to reach the merits of this claim of error. *See Farmers, Inc.*, 1990-NMSC-100, ¶ 8 (holding that the "[a]ppellant must affirmatively demonstrate its assertion of error"). Allstate relies entirely on a contention that it could not have violated Article 16 until it knew that Guest's contract was for insurance, but Allstate never engages in any analysis to demonstrate that willful misconduct under Section 59A-16-30(B) requires such knowledge. We note that in similar circumstances under the Unfair Practices Act a willful violation requires "the intentional doing of an act with knowledge that harm may result." *Atherton v. Gopin*, 2015-NMCA-003, ¶ 54, 340 P.3d 630. The jury in this case, in awarding punitive damages, found that Allstate intentionally acted to cause harm to Guest or knowing with certainty that it would harm her. *See O'Neel v. USAA Ins.*

19

*Co.*, 2002-NMCA-028, ¶ 19, 131 N.M. 630, 41 P.3d 356 (concluding that an insured's "entitlement to attorney fees [under Section 59-16-30(B)] was established by the factual determinations implicit in the jury's award of punitive damages"). Moreover, to the extent Allstate takes issue with any characterization that it failed to honor its agreement with Guest, its recitation of the underlying facts is woefully inadequate. The record proper in this case, including supplements, spans nearly 17,000 pages. There are eighteen volumes of transcripts between 2006 and 2019, and six CDs worth of audio recordings. Meanwhile, Allstate's brief on this issue is three pages long. Allstate's reliance on *Amica Mutual Insurance Co.* is also of little help, because that case offers no insight into the unique situation here, when an insurer is found to have an obligation to pay their insured, leading to a successful breach of contract claim, but its failure to do so is later determined to also be in violation of Article 16.

{31}     Without providing us with the necessary analysis or facts to persuade us that the district court erred in the determination that Allstate willfully violated Article 16, we will not endeavor to find reasons to do so ourselves. This Court risks erroneously deciding important questions of law when litigants fail to address all issues necessary to deciding those questions, and the presumption of correctness prevents us from engaging in such a fraught exercise for the purpose of reversing. *See Farmers, Inc.*, 1990-NMSC-100, ¶ 8 (explaining that there is a presumption on

20

review that the district court acted correctly); *State ex rel. Hum. Servs. Dep't v. Staples*, 1982-NMSC-099, ¶¶ 3, 5, 98 N.M. 540, 650 P.2d 824 ("[C]ourts risk overlooking important facts or legal considerations when they take it upon themselves to raise, argue, and decide legal questions overlooked by the lawyers who tailor the case to fit within their legal theories."). As such, we affirm the district court's finding that Allstate acted willfully and that an award of attorney fees is justified under Section 59A-16-30(B). Because Guest's award is supported by Section 59A-16-30(B), we do not need to address Allstate's alternative argument that Section 39-2-1 does not support the award.

## B.    Allstate's Due Process Rights

{32}    We next turn to Allstate's argument that it was deprived of due process when the district court awarded Guest her attorney fees based on Section 59A-16-30(B), even though Guest never pled recovery under that statute. At this point, the fact that this case has been through New Mexico's appellate courts previously becomes relevant, because this appeal is not the first time Allstate has presented this argument to this Court.

{33}    "[A] decision by an appeals court on an issue of law made in one stage of a lawsuit becomes binding on subsequent trial courts as well as subsequent appeals courts during the course of that litigation." *UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 21. The doctrine of law of the case is premised on "the interests of the parties

21

and judicial economy," so that "once a particular issue in a case is settled it should remain settled." *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 40, 125 N.M. 721, 965 P.2d 305 (internal quotation marks and citation omitted). Not only does the doctrine preclude issues expressly or necessarily decided, we have recognized, in line with courts across the country that appellate courts in subsequent appeals "should refuse to consider issues that could have been raised in a prior appeal but were not." *Ferrell v. Allstate Ins. Co.*, 2007-NMCA-017, ¶ 50 141 N.M. 72, 150 P.3d 1022 (collecting cases), *rev'd on other grounds*, 2008-NMSC-042, 144 N.M. 405, 188 P.3d 1156.

{34} The law-of-the-case doctrine is discretionary. *Trujillo*, 1998-NMSC-031, ¶ 41. It is a matter of sound court policy, "not of inflexible law," and will give way when its application results in an "obvious injustice." *Id.* (internal quotation marks and citation omitted). When evaluating whether such an injustice will occur, we must consider whether the parties justifiably relied on the previous appellate decision. *See id.* ¶ 42. Indeed, our Supreme Court has even applied the law of the case doctrine to a "clearly erroneous" appellate decision because the parties had justifiably relied on that decision in subsequent litigation. *Id.* ¶ 41; *see id.* ¶ 42 (applying intermediate scrutiny to a constitutional analysis only for the parties in the case, but rational review to all subsequent cases of the same type).

{35}    When this case first came before this Court, Guest cross-appealed, arguing that the district court improperly denied her request for attorney fees under Section 59A-16-30(B) or Section 39-2-1. In Allstate's answer brief, it argued that, because Guest never pled for fees under either statute, "[d]ue process principles prohibit Guest's post-trial attempts to recover fees under those theories now." Although Guest made the same argument in her cross-appeal to our Supreme Court, Allstate did not continue to pursue its due process argument in response.

{36}    Thus, Allstate had the opportunity to raise its previously raised due process argument on appeal to our Supreme Court, but did not. We do not know why Allstate did not continue to pursue its argument then, or why it has now decided to bring the same argument to us again. There is nothing substantively new this time either. While it further elaborates on the issue, Allstate provides us with the same case law and propositions as before. The doctrine of law of the case soundly precludes Allstate's second attempt. *See Ferrell*, 2007-NMCA-017, ¶ 50. Although application of the doctrine is discretionary, there is no indication that its application here will result in an obvious injustice. Rather, the parties justifiably relied on our Supreme Court's decision that Guest had an insurance contract with Allstate when they litigated whether she could recover attorney fees and costs on remand—for nearly ten years. It would be inappropriate to permit Allstate to call into doubt those efforts

23

based on a rehashed argument that it could have presented to our Supreme Court before, but chose not to. Its due process argument is therefore precluded.

## C.    Guest's Award of Her Own Fees

{37}    Out of the $3,445,093.66 attorney fees and costs awarded to Guest by the district court, $2,294,998.55 were fees incurred by her. Allstate contends that this was erroneous because a pro se litigant is not entitled to an award of attorney fees, even if the litigant is an attorney. Guest counters that she was never pro se because she represented her law firm—which is incapable of representing itself—and the law firm represented her. We do not answer the question whether Guest was acting pro se, because we conclude, even assuming she was, she can recover her fees in this case.

{38}    This issue has been addressed twice by our Supreme Court. First, in *Hinkle, Cox, Eaton, Coffield & Hensley v. Cadle Co. of Ohio, Inc.*, the plaintiff, a law firm, sued the client, the defendant to recover unpaid legal services. 1993-NMSC-010, ¶¶ 1, 5, 115 N.M. 152, 848 P.2d 1079. The district court granted summary judgment in favor of the plaintiff. *Id.* ¶ 13. The plaintiff accordingly requested attorney fees under NMSA 1978, Section 39-2-2.1 (1975), including fees from work incurred by the plaintiff's in-house counsel. *Hinkle*, 1993-NMSC-010, ¶ 15. The district court denied the request in as far as it included in-house fees, stating that its practice was

24

not to award attorney fees "when the attorney is doing their own work." *Id.* (internal quotation marks omitted).

{39} Our Supreme Court reversed the district court's grant of summary judgment, holding that there was a question of fact over the reasonableness of the plaintiff's unpaid legal fees. *Id.* ¶ 26. Although this holding made it "unnecessary to consider" the plaintiff's argument that fees from its in-house counsel should have been included in the attorney fee award, our Supreme Court issued guidance on remand in the event the plaintiff ultimately succeeded in holding the defendant liable. *Id.* ¶ 33. The Court stated that the district court erred "to the extent it ruled, as a matter of law, that attorneys who represent themselves cannot be awarded attorney[] fees for such representation." *Id.* ¶ 34. Our Supreme Court acknowledged that "there may be dangers in some cases in allowing recovery of such fees," but concluded that there are "compelling reasons for awarding them in many cases." *Id.* Those reasons included the fact that it would be "unjust to deny fees to an attorney or law firm" who is self-represented when they have "potentially incurred as much pecuniary loss as if it had employed outside counsel." *Id.* Further, "it should be of no significance to the party bound to pay attorney[] fees whether the award of fees is to an attorney or firm representing itself or is to retained counsel." *Id.* Thus, if the plaintiff prevailed, the district court was to permit "in-house fees to the extent that they are

reasonable in amount, necessarily incurred, and not duplicative of" services by retained counsel. *Id.*

{40} Second, in *Faber v. King*, 2015-NMSC-015, ¶ 3, 348 P.3d 173, the plaintiff made a request pursuant to the New Mexico Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2023), seeking employment data for attorneys employed by the Attorney General's Office. The plaintiff sued after his IPRA request was denied. *Faber*, 2015-NMSC-015, ¶ 4. The plaintiff succeeded in showing that the Attorney General violated IPRA, and accordingly moved for an award of damages—$100 per day from the date of noncompliance until the Attorney General complied. *Id.* ¶ 5. Ultimately, the district court awarded $10 per day from the date of noncompliance until a stay in a related case was lifted, then $100 for each day of noncompliance afterward, along with the plaintiff's costs. *Id.*

{41} The question before our Supreme Court was whether Section 14-2-12(D) of IPRA permitted the district court's award of per diem damages. *See Faber*, 2015-NMSC-015, ¶ 6. In its opinion, the Court discussed what damages are generally permitted for IPRA violations. *Id.* ¶¶ 17-18. As part of this discussion, the Court held that attorney fees, costs, and actual damages are recoverable under Section 14-2-12. *Faber*, 2015-NMSC-015, ¶ 32. It noted, however, that the plaintiff was "not

entitled to attorney[] fees because [they are] an attorney and [they] litigated this matter pro se." *Id.* ¶ 34.

{42} Allstate argues that we must follow *Faber* and reverse the district court's award of Guest's own fees, which was premised on *Hinkle*. However, our Supreme Court's isolated statement in *Faber* is not controlling on this issue. The Court's only support in *Faber* for its statement was this Court's opinion in the same case and a nonprecedential, nonbinding opinion from the United States District Court for the District of New Mexico. *See* 2015-NMSC-015, ¶ 34 (citing *Faber v. King*, 2013-NMCA-080, ¶ 11, 306 P.3d 519, *rev'd* 2015-NMSC-015, ¶ 41; *Guttman v. Silverberg*, 374 F. Supp. 2d 991, 993 (D.N.M. 2005)). In this Court's opinion in *Faber*, there was likewise only a single sentence on the matter, where this Court said the plaintiff "waived his claim to attorney fees" and instead argued damages. 2013-NMCA-080, ¶ 11. And in *Guttman*, the federal district court explicitly declined to "decide whether a pro se defendant can ever recover fees." 374 F. Supp. 2d at 993. Furthermore, the Attorney General's briefing to this Court in *Faber* clarifies that the plaintiff expressly conceded the issue. We accordingly conclude that our Supreme Court's brief statement in *Faber* on an issue that was not in dispute does not control our disposition of the issue before us now. Instead, we conclude our Supreme Court's discussion in *Hinkle*—which provided persuasive reasoning for awarding an attorney who is self-represented their attorney fees in some cases—is binding.

27

**{43}**    Allstate notes certain policy concerns against awarding an attorney their own fees, such as disincentivizing self-represented attorneys from obtaining counsel, or encouraging litigation for the sake of profit. However, our Supreme Court in *Hinkle* acknowledged these dangers. *See* 1993-NMSC-010, ¶ 34. To curb them, the fees requested must be "reasonable in amount, *necessarily incurred*, and not duplicative" of retained counsel. *Id.* (emphasis added). We therefore hold that Guest was not precluded from recovering her own fees in this case so long as they were reasonable, necessary, and not duplicative of those fees incurred by counsel she retained at various times throughout this litigation. *See id.* Allstate has not provided us with sufficient information and argument to second-guess the amount awarded by the district court, which was properly based on *Hinkle. See* Rule 12-318(A)(3) (requiring an appellant to provide a summary of evidence bearing on a finding of fact when challenging that finding). Therefore, we affirm the district court's order awarding attorney fees.

**III.    Interest on the Judgment**

**{44}**    The last issue we will discuss at length is whether the district court properly awarded pre and post-judgment interest on certain portions of the total award to Guest. The district court awarded 6 percent prejudgment interest on Guest's award of her own fees. The interest was compounded monthly, totaling $107,734. The district court awarded post-judgment interest as follows: (1) 15 percent interest on

28

Guest's award of punitive damages that compounds annually; (2) 15 percent interest on Guest's total award of fees and costs that compounds annually; and (3) 6 percent interest on Guest's award of her own fees that compounds monthly. We begin by addressing the propriety of awarding prejudgment interest on the fee award, then turn to the propriety of awarding compounding interest instead of simple interest.

## A. Prejudgment Interest

{45}     Allstate argues that prejudgment interest cannot be imposed on Guest's attorney fee award because that award is a sanction for willful violations of Chapter 59A, Article 16 of the Insurance Code. *See* § 59A-16-30(B). Allstate equates such a sanction to punitive damages, for which prejudgment interest generally cannot be added. *See Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 55, 127 N.M. 47, 976 P.2d 999 (stating that prejudgment interest "was never intended to encompass an award of punitives"); *Weidler v. Big J Enters. Inc.*, 1998-NMCA-021, ¶¶ 52-54, 124 N.M. 591, 953 P.2d 1089 (holding that NMSA 1978, Section 56-8-4(B) (1993, amended 2004) cannot support an award of prejudgment interest on punitive damages). Hence, for the purposes of prejudgment interest, Allstate suggests we should view punitive damages and an award of attorney fees under Section 59A-16-30(B) as the same.

{46}     Prejudgment interest may be awarded under Section 56-8-4(B) and is intended to compensate a plaintiff whose recovery may otherwise be diminished by dilatory

29

tactics. *See Coates*, 1999-NMSC-013, ¶ 55; *see also Bird v. State Farm Mut. Auto. Ins. Co.*, 2007-NMCA-088, ¶ 33, 142 N.M. 346, 165 P.3d 343 ("Section 56-8-4(B) is a tool whereby the [district] court may ensure that the compensation due to a plaintiff is not unduly delayed by a defendant's dilatory practices." (alteration, internal quotation marks, and citation omitted)). By contrast, "[p]unitive damages are for the purpose of punishment and deterrence," rather than compensation. *Weidler*, 1998-NMCA-021, ¶ 53. Because prejudgment interest is designed to make the plaintiff whole, *see Coates*, 1999-NMSC-013, ¶ 55, it would be inappropriate to add it onto an award that does not serve that purpose. *See Weidler*, 1998-NMCA-021, ¶ 54. Further, "[a]dding prejudgment interest to a punitive damages award would change what the jury determined to be appropriate punishment and, thus, undermine the principles of punitive damages." *Id.* ¶ 53.

{47}    Attorney fee awards and punitive damages serve related but different purposes. Awards of attorney fees under Section 59A-16-30(B) have previously been described as "fee sanctions." *City of Farmington v. L.R. Foy Constr. Co.*, 1991-NMSC-067, ¶¶ 10-15, 112 N.M. 404, 816 P.2d 473. Indeed, the district court may only award fees under that statute only if there is a finding of knowing or willful misconduct, depending on which party is receiving the award. *See* § 59A-16-30; *cf. Jackson Nat'l Life Ins. Co. v. Receconi*, 1992-NMSC-019, ¶ 62, 113 N.M. 403, 827 P.2d 118 (indicating that refusing to award attorney fees under Section 39-2-1 would

30

be inconsistent with a "findings of unreasonable conduct on" the insurer's part). However, "[w]hile it is certainly true that attorney[] fee awards are a punitive sanction, they also have a compensatory aspect." *State ex rel. N.M. State Highway & Transp. Dep't v. Baca*, 1995-NMSC-033, ¶ 22, 120 N.M. 1, 896 P.2d 1148. This is because attorney fees may be insufficient to effectuate their punitive aspects, but will nonetheless serve to compensate a party for its losses incurred through litigation. *See id.* ¶¶ 12, 22.

{48} Although there may be circumstances where an award of attorney fees only serves to punish a party, thus making prejudgment interest inapplicable, Allstate has not persuaded us that such circumstances are present in this case. While the award is punitive in that it punishes Allstate for certain willful violations of Chapter 59A, Article 16, it likewise serves the purpose of compensating Guest for her own time spent litigating to hold Allstate liable for those violations. *See Baca*, 1995-NMSC-033, ¶ 22; *see also Coates*, 1999-NMSC-013, ¶ 55 (noting the compensatory purpose of prejudgment interest). Accordingly, we disagree with Allstate's argument that we should view the attorney fee award as entirely punitive, and prejudgment interest was permissibly added to Guest's attorney fees.

{49} Allstate further argues that prejudgment interest, even if permissible, is unwarranted because it did not delay proceedings. However, an award of prejudgment interest is discretionary, and we will only reverse it if we find the

31

district court's decision "is contrary to logic and reason." *Smith v. McKee*, 1993-NMSC-046, ¶ 7, 116 N.M. 34, 859 P.2d 1061. Prejudgment interest "foster[s] settlement and prevent[s] delay." *Weidler*, 1998-NMCA-021, ¶ 52. Allstate contends that it made efforts to "expedite matters," but was thwarted by the district court's order permitting additional discovery on remand and a five-day hearing.

{50} Allstate falls short of showing that the district court abused its discretion in awarding prejudgment interest. Even though Allstate may have taken steps to expedite a decision on remand, Allstate also contributed in expanding proceedings on remand by requesting broad additional discovery, including six weeks for expert review of documents produced by Guest, and a multi-day hearing. Allstate also neglects to include any discussion of the delay prior to remand, even though the parties argued at length about the issue when the district court awarded prejudgment interest on Guest's original compensatory damages award. Moreover, Allstate provides us with no information concerning any attempts at settlement, a necessary consideration when awarding prejudgment interest. *See* § 56-8-4(B)(2); *see also Fort Knox Self Storage, Inc. v. W. Techs., Inc.*, 2006-NMCA-096, ¶ 42, 140 N.M. 233, 142 P.3d 1 (upholding prejudgment interest award when the complaining party failed to present any information on attempts at settlement). Once again, on appeal, we "presume[] that the district court is correct, and the burden is on the appellant to clearly demonstrate that the district court erred." *Corona v. Corona*, 2014-NMCA-

32

071, ¶ 26, 329 P.3d 701. Given the foregoing, we conclude that the district court did not abuse its discretion in awarding prejudgment interest on Guest's award of her own attorney fees.

**B.      Compounding Interest**

{51}      Next, Allstate argues that the district court's award of pre and post-judgment interest should have been simple interest rather than compound interest. We agree with Allstate. Based on a review of the record and applicable law, we are aware of no legal basis for awarding compound interest here. *See State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 50, 329 P.3d 658 ("The default rate under [1978 NMSA,] Section 56-8-3 [(1983)] is calculated as simple interest."); *Consol. Oil & Gas, Inc. v. S. Union Co.*, 1987-NMSC-055, ¶ 42, 106 N.M. 719, 749 P.2d 1098 (reversing an award of prejudgment interest under Section 56-8-4 for incorporating monthly compound interest); *Peters Corp. v. N.M. Banquest Invs. Corp.*, 2008-NMSC-039, ¶¶ 51-52, 144 N.M. 434, 188 P.3d 1185 (holding that NMSA 1978, Section 53-15-4(F) (1983) permits an award of compound interest, in contrast to Section 56-8-3 and 56-8-4). Accordingly, to the extent the district court awarded compound interest rather than simple interest, it did so in error, resulting in an overvaluation of the interest due on the judgment. We therefore reverse the district court and remand for recalculation of pre and post-judgment interest at a simple interest rate.

## IV. Remaining Arguments

{52} We do not address Allstate's remaining arguments in depth. *See, e.g., Aguilar v. State*, 1988-NMSC-004, ¶ 1, 106 N.M. 798, 751 P.2d 178 (summarily disposing of certain issues based on their lack of merit). Allstate has not persuaded us that any remaining errors that may have occurred warrant reversal. *See Crutchfield v. N.M. Dep't Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 (describing preservation requirement and explaining purposes of that requirement); *see also Kennedy v. Dexter Consol. Schs.*, 2000-NMSC-025, ¶ 26, 129 N.M. 436, 10 P.3d 115 (describing the standard for reversal when preservation requirement has been met).

## CONCLUSION

{53} We affirm the district court's award of attorney fees and costs, along with its decision to award pre and post-judgment interest, but remand for recalculation of that interest at a simple interest rate and evaluation of whether Guest's punitive damages award is constitutionally reasonable in a manner consistent with our Supreme Court's mandate and this opinion on that issue.

{54} **IT IS SO ORDERED.**

_____
**SHAMMARA H. HENDERSON, Judge**

34

**WE CONCUR:**

_____
**JENNIFER L. ATTREP, Chief Judge**

_____
**ZACHARY A. IVES, Judge**